**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TENNESSEE**
**WESTERN DIVISION**

| | | |
|---|---|---|
| MARIO TENORIO,<br>Plaintiff,<br><br>v.<br><br>OSAKA 88, LLC,<br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 2:25-cv-02547-SHL-atc |

**ORDER GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Before the Court is Plaintiff Mario Tenorio's Motion for Partial Summary Judgment, (ECF No. 25), filed April 30, 2026, and Defendant Osaka 88, LLC's Motion for Summary Judgment, (ECF No. 26), filed May 6, 2026. As described below, the undisputed facts show by a preponderance of evidence that Mr. Tenorio was owed, but not paid, compensation for overtime work, and that Osaka willfully violated the Fair Labor Standards Act's overtime and recordkeeping provisions. Thus, the Court finds as a matter of law that Mr. Tenorio's Motion for Partial Summary Judgment should be **GRANTED**, and Osaka's Motion for Summary Judgment should be **DENIED**. However, because the amount of compensation owed is disputed, a trial on that issue is necessary.

## I. BACKGROUND[1]

Osaka is a full-service restaurant, serving Asian food, located at 3402 Poplar Avenue in

[1] The facts are drawn from (1) Plaintiff's Statement of Undisputed Material Facts, (ECF No. 25-2); (2) Defendant's Statement of Undisputed Material Facts, (ECF No. 29); (3) Defendant's Response, (ECF No. 26-2); (4) Plaintiff's Response and Statement of Additional Undisputed Material Facts, (ECF No. 27-1), and (5) related exhibits. Where factual disputes remain, it is noted.

Memphis, Tennessee. (Pl.'s Statement of Undisputed Material Facts, ECF No. 25-2 at PageID 82.) Its gross sales were not less than $500,000.00 for years 2022–25. (Id.)

In 2013 or 2014, Osaka hired Mr. Tenorio as a dishwasher. (Id. at PageID 84.) He "was quickly promoted to fryer, then second cook, and then cook." (Id. at PageID 84.) By 2022, "Mr. Tenorio was working as a chef at the Restaurant." (ECF 26-2 at PageID 338.) Mr. Tenorio states that Osaka paid him a salary of $1,300.00 every fifteen days, plus varying "amounts of tips." (ECF No. 25-2 at PageID 84.) Indeed, Osaka admitted in its Answer that "Plaintiff was paid $1300.00 every fifteen days, plus a portion of 'earned tips,' the amounts of which fluctuated and were dependent on Restaurant sales from week to week." (ECF No. 13 at PageID 33.) As part of these motions, Osaka argues that Mr. Tenorio was paid varying amounts each pay period based on his hours worked, at $11 per regular hour and $16 or $16.50 per overtime hour.[2] (ECF No. 26-2 at PageID 338; ECF No. 27-1 at PageID 573.) However, there is only one contemporaneously created document—the Payroll Receipt Mr. Tenorio produced—that recorded the amount of compensation he was paid in one pay period. (ECF No. 25-2 at PageID 85.) That document supports his contentions as to his pay.

## A. Osaka's Employee Timekeeping Process and Related Exhibits

Mr. Tenorio did not clock in or out on Osaka's employee time clock.[3] (ECF No. 29 at PageID 819.) Instead, he states that he worked "a regular schedule" from Tuesday to Saturday, averaging fifty hours per week. (Id.) He states that his "regular schedule" was "Tuesdays,

---

[2] Osaka's statements regarding the overtime hourly amount purportedly paid to Mr. Tenorio, included both $16 in Ms. Pham's deposition, and $16.50 in her subsequently filed declaration. (Compare ECF No. 25-5 with ECF No. 26-15.)

[3] The parties agree that Mr. Tenorio did not utilize a time clock. Mr. Tenorio states he was not required to do so, but Osaka states that he refused to use the time clock from 2022–25. (ECF No. 26-2 at 339.) This dispute need not be resolved for purposes of these motions.

Wednesdays, Thursdays from 10 a.m. to 3 p.m., and 4 p.m. to 9:30 p.m.; Fridays from 10 a.m. to 3 p.m., and 4 p.m. to 10:00 p.m.; and Saturdays from 3:30 p.m. to 10:30 p.m. or 11:00 p.m." (ECF No. 25-2 at PageID 84.) Osaka disputes this. (ECF No. 29 at PageID 820.) But, according to the "Weekly Schedules" provided by Osaka, Mr. Tenorio worked most Tuesdays, Wednesdays, Thursdays, Fridays, and Saturdays through the lunch and dinner shifts. (See ECF No. 26-9 (showing "Weekly Schedules" from 2022–25 produced by Osaka).) The Weekly Schedules do not indicate exact times employees arrived at work or left work, other than noting "lunch" and "dinner" shifts. (See id.)

Osaka followed a multistep process for calculating the amount of time that employees worked. The on-site assistant manager, Ms. McGarrity, "wrote down when Mr. Tenorio and other employees [] arrive[d] for the morning and afternoon shifts, but she did not write down when he or other employees would leave each day." (ECF No. 29 at PageID 820.)[4] Ms. Pham, the restaurant manager in charge of the payroll, used Ms. McGarrity's notes and the Weekly Schedules to calculate Mr. Tenorio's time worked. (Id. at PageID 820–21.) Using these materials, Ms. Pham created "Timesheets" to show the number of hours Mr. Tenorio worked during Osaka's two-week pay period. (ECF. No. 26-2 at ¶ 10; see also ECF No. 26-10 (showing Ms. Pham's calculation of Mr. Tenorio's regular and overtime hours worked).) "[I]n order to receive his pay," he was required to sign the Timesheets every pay period. (ECF No. 27-1 at PageID 575.) Mr. Tenorio argues that he never reviewed the Timesheets because he was always paid his salary in cash. (ECF No. 27-1 at PageID 577.)[5]

---

[4] Osaka did not produce Ms. McGarrity's notes documenting these times.

[5] Osaka argues that Mr. Tenorio requested to be paid in cash, but Mr. Tenorio denies that he ever requested to be paid in cash. (ECF No. 27-1 at PageID 577.) Again, this dispute is not relevant here.

Ms. Pham explained the Timesheets in her deposition. (See Pham Dep., ECF No. 25-5 at PageID 245–26.) She said that the numbers in the "Total Daily Hours" typewritten column on the Timesheets indicate total weekly hours that Mr. Tenorio worked. (ECF No. 25-5 at PageID 245.) When Mr. Tenorio's counsel asked Ms. Pham to explain her process of calculating "the normal hours and overtime hours," using the May 15, 2023 Timesheet as an exemplar, she stated, "43, 49. So it is twelve hours overtime." (Id.; ECF No. 26-10 at PageID 504.) Then, Ms. Pham clarified that she got the twelve hours of overtime by adding the number of hours above forty for each week, explaining that "43 is 3. And the 49 is 9," therefore, three plus nine equal twelve hours of overtime for the May 15 pay period. (Id.) She said that the third number on the May 15, 2023 Timesheet likely represented "an extra weekend," which added a few days to that specific pay period. (Id.)[6]


EMPLOYER
EMPLOYEE'S NAME Mario Tenorio
EMPLOYEE'S ADDRESS
EMP. SSN | HIRE DATE | PAY PERIOD ENDING 5/15/23
BIRTH DATE (IF UNDER 18) | DISCHARGE DATE | OCCUPATION

| DATE | IN | OUT | IN | OUT | IN | OUT | TOTAL DAILY HOURS | MEALS B | L | D |
|---|---|---|---|---|---|---|---|---|---|---|
| Full | | | | | | | 43 | | | |
| | | | | | | | 49 | | | |
| | | | | | | | 21 | | | |

THIS WEEK: TOTAL HOURS | REG. HOURS | RATE PER HR.
TOTAL DAYS | 2ND POSITION HRS | RATE PER HR.
GROSS EARNING WITHOUT REMUNERATION
REMUNERATION OTHER THAN CASH (ROOM,BOARD,TIPS, ETC.)
GROSS EARNINGS
% FEDERAL WITHHOLDING TAX
% MEDICARE TAX
% SOCIAL SECURITY TAX
% STATE WITHHOLDING TAX
% LOAN INSTALLMENTS PAY
% FEDERAL INS. CONTRIBUTION ACT
TOTAL DEDUCTIONS
NET EARNINGS
LESS REMUNERATION OTHER THAN CASH
CASH | CHECK AMOUNT
CHECK NUMBER ____ | NET PAY THIS PERIOD

I hereby certify that the above information is corrected. I received the payment shown above as my acceptance that my pay check amount is accurate and agree with the time records shown for the above paid period. I waive my rights to seek any legal judgment against my employer, Osaka Japanese Cuisine L.L.C and Osaka 88 L.L.C and Osaka Selected L.L.C and Viet Choice Cuisine after sign this statement over 30 days.

EMPLOYEE'S SIGNATURE | DATE PAID 5/24/2023

[6] However, when pressed further, Ms. Pham could not explain which "extra days" the "21" on the May 15 Timesheet actually represented, ultimately stating that she did not remember. (ECF No. 25-5 at PageID 246–50.)

7

(ECF No. 26-10 at PageID 504.)

Osaka's Timesheets show that Mr. Tenorio often worked overtime. (For example, see ECF No. 26-10 at PageID 491–529.) Mr. Tenorio disputes the accuracy of the Timesheets as to the precise number of hours he worked, arguing that he worked, on average, fifty hours per week.[8] (ECF No. 27-1 at ¶ 17.)

Mr. Tenorio argues that Osaka maintained or produced no "contemporaneous pay records . . . that evidenced the amounts actually paid" to him. (ECF No. 25-2 at PageID 85.) Osaka disputes this, pointing to its Timesheets, Weekly Schedules, and Spreadsheet. (ECF No. 29 at PageID 822.) However, neither the Timesheets nor the Weekly Schedules contain the amounts paid to Mr. Tenorio per pay period. (See ECF No. 26-10 at PageID 491–529, ECF No. 26-9.) The Spreadsheet contains, according to Osaka, "the information from the timesheets and [weekly] schedules, along with the amount paid to Plaintiff for each pay period, and including overtime." (ECF 29 at PageID 821.) However, Osaka admits that the Spreadsheet was created after this litigation commenced. (Id.) According to Mr. Tenorio, the Spreadsheet does not "accurately reflect the payments made to [him] or the hours he worked." (Id.) Rather, he states that the only record containing an amount paid to him is the Payroll Receipt that he produced, showing that Osaka paid him "$1,300 for the 15 days of work, plus $150 [] for an additional day

[7] May 15, 2023 Timesheet produced by Osaka. During her deposition, Ms. Pham used this specific Timesheet to explain how she calculated employee hours. (See ECF No. 25-5 at PageID 245.)

[8] Mr. Tenorio contends that he "worked 50 hours per week" on average. (ECF No. 25-2 ¶ 16.) Osaka disputes that Mr. Tenorio worked fifty hours per week on average, pointing to Ms. Pham's calculations process and the Timesheets in response. (ECF No. 29 at ¶ 16; ECF No. 26-2, at ¶ 3–4, 8–10, 17–20.) The specific number of overtime hours need not be decided at this point, but it remains an issue to be determined at trial.

of work outside of those 15 days, plus $200 in tips," dated April 16, 2025. (ECF No. 25-2 at PageID 85.) Osaka does not dispute the accuracy of the Payroll Receipt. (ECF No. 29 at PageID 822.)

**B. The Garcia-Moreno Lawsuit**

In November 2013, Osaka and its owner, Mr. Dihn Q. Le, were sued by former employee Leiver Alejandro Garcia-Moreno "for violations of the overtime provisions of the [FLSA]."[9] (ECF N0. 25-2 at PageID 83.) Mr. Garcia-Moreno alleged in his complaint that he regularly worked more than 40 hours per week as a cook from 2010 to October 2013, and Osaka did not pay him for his overtime hours, instead paying him a salary of $1,000 every fifteen days. (Id. at PageID 83.) Osaka reached a settlement with Mr. Garcia-Moreno "that paid [him] 100% of his claimed damages." (Id.)

## II. LEGAL STANDARD

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Courts view any inferences drawn from the underlying facts "in a light most favorable to the nonmoving party." Matsuhita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). Once a properly supported motion for summary judgment is made, the party opposing summary judgment must show that there are no genuine disputes of material fact by pointing to evidence in the record or must argue that the moving party is not entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a), (c)(1). A genuine issue for trial exists if the evidence would

[9] Osaka objects to the relevance of the allegations in its prior lawsuit and related court-approved settlement under L.R. 56.1(e) and Federal Rules of Evidence 401 and 402. (ECF No. 29 at PageID 817–18.) The Court **OVERRULES** Osaka's objections because evidence of a prior lawsuit by an employee in a similar position with similar allegations under the FLSA goes to the question of whether Osaka willfully violated its obligations under the statute.

permit the factfinder to return a verdict for the non-moving party. Anderson v. Liberty Lobby Inc., 477 U.S. 242, 248 (1986).

While courts view all evidence and factual inferences in the light most favorable to the non-moving party, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Id. at 247–48. It is not the court's role to weigh evidence or assess witness credibility—it must simply determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Kroll v. White Lake Ambulance Auth., 763 F.3d 619, 623 (6th Cir. 2014) (citing Anderson, 477 U.S. at 251–52). When more than one party moves to resolve a case through summary judgment, courts still must "evaluate each motion on its own merits and view all facts and inferences in the light most favorable to the non-moving party." Beck v. City of Cleveland, 390 F.3d 912, 917 (2004) (quoting Wiley v. United States, 20 F.3d 222, 224 (6th Cir. 1994)).

## III. ANALYSIS

First, Mr. Tenorio argues that there are no genuine disputes of material fact as to Osaka's overtime violation because (1) it admitted to paying Mr. Tenorio a salary of $1,300 every fifteen days, plus a variable amount of tips; and (2) the record, including testimony, and Osaka's produced Weekly Schedules and Timesheets show that he worked overtime. (ECF No. 25-1 at PageID 75.) Second, he argues that Osaka failed to comply with FLSA recordkeeping requirements, creating an inference as to Mr. Tenorio's estimated damages and wages owed. (Id. at PageID 76–77.) Third, he argues that Osaka's FLSA violations were willful, and thus the statute of limitations should be extended to three years. (Id. at PageID 78–79.) Lastly, he argues

that he is entitled to mandatory liquidated damages. (Id. at PageID 77–78.)

Osaka argues that (1) Mr. Tenorio cannot meet his burden to show he worked uncompensated overtime, and (2) even if the Court finds that he can satisfy his burden to show a reasonable inference that he worked uncompensated overtime, Osaka's evidence sufficiently negates that inference. (ECF No. 26-1 at PageID 333–36.)

**A. FLSA Liability**

The Fair Labor Standards Act requires employers to pay the federal minimum wage and provide overtime pay to those covered under the FLSA's overtime provision. Jewell Ridge Coal Corp. v. Local No. 6167, 325 U.S. 161, 167 (1945). To succeed on an overtime claim under the FLSA, a plaintiff must show that, among other things, the employee worked more than forty hours per week, and the employer did not pay the employee overtime. Stansbury v. Faulkner, 2020 U.S. Dist. LEXIS 104904, *14 (W.D. Tenn. 2020).

Addressing the parties' arguments together, the Court first examines the question of whether Mr. Tenorio was paid a salary or hourly wage, followed by the question of whether he worked overtime hours. The issues of recordkeeping, willfulness, and liquidated damages are then addressed.

**1. Salary Versus Hourly Wage**

Mr. Tenorio argues that it is undisputed that he was paid a fixed amount of "$1,300 every fifteen days, plus a portion of 'earned tips,' the amounts of which fluctuated and were dependent on Restaurant sales from week to week" because Osaka admitted this fact in its Answer. (ECF No. 25-1 at PageID 74–75; see ECF No. 13 at PageID 33.) Osaka contends that "[r]egardless of the context" of its Answer, "the law is well settled that allegations in pleadings do not even constitute 'evidence' that can or should be considered for summary judgment." (Id.) It instead

points to its subsequently produced evidence, including manager testimony and declarations to support its arguments that it paid Mr. Tenorio all overtime that was due. (ECF No. 28 at PageID 807.)

Osaka mischaracterizes the law as to its admission in its Answer. Admissions of fact in pleadings generally bind the parties and the Court. Id; see also Trimas Corp. v. Meyers, 572 Fed. Appx. 347, 352 (6th Cir. 2014) (discussing cases regarding "the effect of a party's admission to a particular fact in a pleading"). Although unsworn allegations in pleadings generally do not constitute competent evidence in support of a party's own position in a motion, a party's formal factual admission in a pleading presents a different question. See Dole v. Elliot Travel & Tours, Inc., 942 F.2d 962, 965 (6th Cir. 1991) (explaining that the non-moving party cannot rest on its *own* pleadings to show the existence of a genuine issue of fact). "Judicial admissions 'eliminate the need for evidence on the subject matter of the admission,'" because the admitted fact is no longer at issue. Ferguson v. Neighborhood Housing Serv. Inc., 780 F.2d 549, 550–51 (6th Cir. 1986) (quoting Seven-Up Bottling Co. v. Seven-Up Co., 420 F. Supp. 1246, 1251 (E.D. Mo. 1976)). Once a fact is admitted in its pleading, a party cannot ordinarily bring that fact back into dispute by subsequently submitting evidence contrary to its prior judicial admission. See Trimas, 572 Fed Appx. at 352.

Osaka's Answer constitutes a factual admission that Mr. Tenorio was paid $1,300 every fifteen days, and its affidavits and contradictory testimony do not, without more, create a genuine dispute as to that admitted fact. Despite its earlier admission, it argues that Mr. Tenorio was paid varying amounts each pay period based on his hours worked, at $11 per regular hour and $16 or $16.50 per overtime hour. (ECF No. 27 at PageID 566.) These statements are inconsistent and contradictory—not supplementary—to Osaka's Answer. Moreover, Osaka maintained no

contemporaneous payroll records documenting payments based on those alleged hourly rates.[10]

In addition to attempting to walk away from the amount of pay admitted in its Answer, Osaka contends that it did not admit that Mr. Tenorio was *salaried*, arguing that its "response to paragraph 15 of the Complaint does not admit any violations of the FLSA," nor does it "state that Plaintiff was salaried," or "concede that Defendant did not pay Plaintiff all overtime to which he was entitled." (ECF No. 28 at PageID 806.) But whether Osaka used the word "salary" is immaterial. Osaka admits in its Answer that Mr. Tenorio was paid $1,300 every fifteen days—whether Osaka called it a salary or not, its admission takes the issue of the amount of the compensation regularly paid to Mr. Tenorio out of dispute.

No genuine dispute exists as to the amount Osaka regularly paid to Mr. Tenorio. Mr. Tenorio was paid $1,300 every fifteen days, plus varied tips.

**2. Overtime Hours**

An employee establishes an FLSA claim for unpaid overtime, when he shows, "by a preponderance of evidence, both that: (1) [he] performed work for which [he] was not properly compensated, and (2) [his] employer had actual or constructive knowledge of that overtime." Rangel v. Paramount Heating & Air Conditioning, LLC., No. 2:17-cv-473, 2019 U.S. Dist. LEXIS 155956, 2019 WL 4345698, at *2 (S.D. Ohio Sept. 12, 2019) (citations omitted).

While the parties dispute the precise number of hours that Mr. Tenorio worked per week, he points to the Weekly Schedules and Timesheets to show that his frequent overtime is not in dispute. (ECF No. 27 at PageID 565–66.) However, Osaka argues that Mr. Tenorio cannot meet his burden to show that he performed uncompensated overtime work because he (1) asserts

[10] Again, the only contemporaneous payroll record produced that shows a payment to Mr. Tenorio is his own Payroll Receipt, showing that Osaka paid him $1,300 for the April 16, 2025 pay period, plus tips. (ECF No. 25-2 at PageID 85.)

"that his claim for overtime compensation was for 'staying late,'" (2) "signed Timesheets, and received cash payments for the "regular hours [and] overtime hours" reflected on each Timesheet, which were different each pay period, and (3) "actively prevented" Osaka from "acquiring knowledge of any alleged uncompensated overtime, or otherwise monitor his actual work time, by refusing to utilize the Restaurant's time clock system." (ECF No. 26-1 at PageID 333.)

Osaka's "staying late" argument is contradicted by its own evidence. Its own records show that Mr. Tenorio worked overtime hours—whether it was due to his staying late or not. (See ECF No. 26-10 at PageID 491–529.) Next, Osaka argues that Mr. Tenorio "actively prevented Osaka from acquiring knowledge of any alleged overtime" because he "refused to utilize" the time clock. (ECF No. 26-1 at PageID 333.) However, no evidence is offered to show that Osaka required him to use a time clock. To the contrary, instead of insisting that Mr. Tenorio adhere to an alleged policy to clock in and out via a time clock, Ms. McGarrity "wrote down when Mr. Tenorio and other employees [] arrive[d] for the morning and afternoon shifts, but she did not write down when he or other employees would leave each day," and Ms. Pham used Ms. McGarrity's notes and the Weekly Schedules—not the time-clock records—to create the Timesheets. See infra Section I. Osaka could have insisted that Mr. Tenorio use the time clock. Instead, it created a different policy for tracking employee hours. And Osaka's own records—the Weekly Schedules and Timesheets—show that Osaka, indeed, knew that Mr. Tenorio worked overtime hours. (See ECF No. 26-10 at PageID 491–529). Exactly what Mr. Tenorio should have been paid in overtime compensation, whether he worked more hours than documented in the Timesheets, and the precise total of those additional overtime hours are questions of material fact still in dispute.

Finally, Osaka argues that Mr. Tenorio signed the Timesheets "on each and every occasion" when Osaka paid him in cash, and he "never complained that the amounts were incorrect or that he was not being compensated for [] overtime." (ECF No. 26-1 at PageID 333, 336.) Mr. Tenorio states that when he signed those Timesheets, he was paid his "fixed salary," thus, he "never discussed or had to discuss [with management] how much they were going to pay [him]" upon signing. (Tenorio Dep., ECF No. 27-3 at PageID 605.) Mr. Tenorio's signature does not absolve Osaka of liability—an employee cannot agree to an employer's FLSA violation.

Accordingly, no genuine dispute of material facts exists as to whether Mr. Tenorio worked overtime. He did.

**B. Damages and the Parties' Burdens**

Given the conclusions as to the amounts regularly paid and overtime worked, questions as to damages arise next. However, there is some confusion as to the way in which to make this determination under the Anderson burden-shifting framework. See Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 687 (1946). Osaka seems to argue as though the burden-shifting framework defines how liability is established. (See ECF No. 26-1 at PageID 333–37.) However, as the Sixth Circuit clarified, the burden-shifting framework shapes the discussion of damages once liability has been established. See Walsh v. Timberline South, 2022 U.S. App. LEXIS 6368, *13 (6th Cir. 2022) (explaining that, where an employer's records are inadequate, an employee may estimate damages through a just and reasonable inference and the burden then shifts to the employer to negate that inferential estimate); Viet v. Le, 951 F.3e 818, 822 (6th Cir. 2020) (clarifying that Anderson's "relaxed" burden of proof applies to damages only after the employee has established liability); O'Brien v. Ed Donnelly Enters., Inc., 575 F.3d 567, 602 (6th Cir. 2009) (explaining that the relaxed Anderson burden applies to proving the extent of *undercompensation*,

following a showing of FLSA liability) (emphasis added); see also Stansbury v. Faulkner, 2020 U.S. Dist. LEXIS 104904, *14 (W.D. Tenn. 2020) (explaining that the relaxed burden applies to damages, and "[t]he burden of preponderance of the evidence" controls the liability question).

It is the employer's duty under the FLSA "to keep proper records of wages, hours and other conditions and practices of employment," as the employer "is in position to know and to produce the most probative facts concerning the nature and amount of work performed." Anderson, 328 U.S. at 687. An employer's failure to keep and maintain those records should not create an impossible hurdle for an employee to show damages owed to him. Id. So when "an employer's records are inaccurate or inadequate, and the employee cannot offer convincing substitutes," an employee need only produce evidence that "he has in fact performed work for which he was improperly compensated" sufficient to create a just and reasonable inference as to his damages. Id. An employee may use discovery and analysis of the employer's records to produce such evidence. Walsh v. Timberline South, 2022 U.S. App. LEXIS 6368, *13 (6th Cir. 2022) (quoting O'Brien v. Ed Donnelly Enters., Inc., 575 F.3d 567, 602 (6th Cir. 2009). Once a reasonable inferential damage estimate is shown, the burden shifts to the employer to negate it. Walsh, 2022 U.S. App. LEXIS at *13 (citing Anderson, 328 U.S. at 688). "If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate." Anderson, 328 U.S. at 688.

As discussed, FLSA liability has been established. See infra discussion Section III.A.1–2. Relying on Anderson, Osaka asserts that it has complied with the record requirements under the FLSA, pointing to its Weekly Schedules, Timesheets, and the after-the-fact-created Spreadsheet, and that it used "best efforts" to comply with the statute despite Mr. Tenorio's alleged refusal to use the timeclock. (ECF No. 28 at PageID 809.) Mr. Tenorio argues that

Osaka's recordkeeping is inadequate and violative of the FLSA, and thus he receives the benefit of Anderson's relaxed burden to show a reasonable inference as to his damages. (ECF No. 25-1 at PageID 76–77.) He asserts that his "testimony of hours worked and pay received, . . . corroborated by" Osaka's Weekly Schedules, and his April 16, 2025 Payroll Receipt establish the reasonable inference, shifting the burden to Osaka. (ECF No. 27 at PageID 567.)

Using the Anderson framework, the Court examines the questions of whether Osaka kept inadequate records in violation of the FLSA, whether Mr. Tenorio has established a reasonable inference as to his damages, and, if so, whether Osaka presented enough evidence to negate his reasonable inference.

**1. FLSA Recordkeeping Requirement**

Although the parties dispute whether Osaka's records accurately reflect all of the hours Mr. Tenorio worked, that dispute does not preclude summary judgment on Mr. Tenorio's recordkeeping claim. Employers are required to maintain, among other things, records of the hours worked each workday and workweek, the employee's basis and rate of pay, straight-time earnings, overtime compensation, total wages paid each pay period, and the date and period covered by each payment. 29 U.S.C § 211(c); 29 C.F.R. § 516.2. The burden of maintaining accurate timekeeping records rests with the employer. Herman v. Palo Group Foster Home, Inc., 183 F.3d 468, 472 (6th Cir. 1999) (quoting Anderson, 328 U.S. at 687–88).

Mr. Tenorio contends that "Osaka [] failed to record, maintain, and preserve" his daily time worked, and "has no records of the amounts due or paid to [him]," and that Osaka's "failure to keep these records creates a rebuttable inference at trial that Mr. Tenorio's estimates of damages and wages owed are correct." (ECF No. 25-1 at PageID 76.) Osaka argues that its Weekly Schedules, Timesheets, and Spreadsheet constitute proper recordkeeping under the

FLSA. (ECF No. 28 at PageID 809.) However, Osaka produced no contemporaneous records documenting, among other things, the wages actually paid to Mr. Tenorio during each pay period. And Ms. Pham, the manager responsible for payroll, stated that records documenting the actual wages paid per pay period do not exist. (ECF No. 25-5 at PageID 251–52.) Accordingly, no genuine dispute exists that Osaka failed to comply with the FLSA's recordkeeping requirements.

Because Mr. Tenorio cannot rely on the precision of Osaka's recordkeeping, his burden to show that he "performed work for which he was improperly compensated" is satisfied because "he produce[d] sufficient evidence to show the amount and extent of [his uncompensated overtime work] as a matter of just and reasonable inference." Anderson, 328 U.S. at 687. Mr. Tenorio believes his "estimated" unpaid overtime to be "no less than $13,494.00," and that he routinely worked anywhere from fifty to "fifty-four and one-half [] hours per week." (Compl., ECF No. 1 at PageID 3; Tenorio Dep., ECF No. 27-3 at PageID 610–11.) Mr. Tenorio's testimony and Osaka's Weekly Schedules support this inference. (See ECF No. 26-3; 26-9.) Thus, the burden shifts to Osaka to come forward with evidence negating it.

**2. Employer's Burden to Negate the Reasonable Inference of the Amount and Extent of Uncompensated Work**

Osaka argues that it "presented sufficient evidence of 'the precise amount of work performed' and/or which negates the 'the [sic] reasonableness of the inference to be drawn from the employee's evidence.'" (ECF No. 26-1 at PageID 336 (citing Stansbury v. Faulkner, 2020 U.S. Dist. LEXIS 104904, *16–17 (W.D. Tenn. 2020).) For support, Osaka cites the Timesheets, arguing that (1) they "specifically identify regular hours and overtime hours for each pay period," (2) Mr. Tenorio "never complained that the amounts were incorrect or that he was not being compensated for overtime," (3) his signature verifies the "accuracy" of the Timesheets,

and (4) that "his inability to identify any actual uncompensated workweek" negates his reasonable inference. (Id. at 336–37.)

Mr. Tenorio disputes that the Timesheets establish the precise number of hours he worked. (ECF No. 27-1 at ¶ 17.) His signatures do not conclusively establish the precise amount of overtime worked where he has disputed those facts. See Moran v. Al Basit LLC, 788 F.3d 201, 205–06 (6th Cir. 2015) (finding that the defendant's contemporaneous handwritten timesheets did not "amount to incontrovertible evidence of Plaintiff's hours worked" when inconsistent with the plaintiff's testimony about the same). Rather, there must be more proof as to the import of his signatures.

Osaka's argument that Mr. Tenorio "never complained" is unconvincing. As discussed, Osaka knew that Mr. Tenorio worked overtime as evidenced by its Timesheets, and it was Osaka's duty as the employer to understand and follow FLSA requirements—not Mr. Tenorio's. Lastly, whether he can recall his schedule precisely is irrelevant. As explained in Moran, "[i]t is unsurprising, and in fact expected, that an employee would have difficulty recalling the exact hour he left work on a specific day months or years ago," and "[i]t is, after all, 'the employer who has the duty under § 11(c) of the [FLSA] to keep proper records of wages [and] hours,' and '[e]mployees seldom keep such records themselves.'" Id. at 205 (quoting Anderson, 328 U.S. at 687).

Much of the evidence supporting Mr. Tenorio's inference consists of Osaka's own records, but the gaps and inconsistencies in the records prevent a more precise determination of the amount and extent of his overtime. In any case, Osaka cannot rely on its own failure to make, keep, and maintain records required by the FLSA to defeat Mr. Tenorio's claim. See Anderson, 328 U.S. at 687–88. Osaka has not yet met its burden. The amount of damages owed

is reserved for trial.

## C. Willful Violation of the FLSA

An ordinary FLSA violation is subject to a two-year statute of limitations, while a cause of action arising from a willful violation is subject to a three-year limitations period. 29 U.S.C. § 255(a). A violation is willful where "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." McLaughlin v. Richland Shoe Co., 486 U.S. 128, 133 (1988). Mere negligence is insufficient, and even an unreasonable determination of an employer's legal obligations does not establish willfulness unless the employer acted recklessly. Id. at 135, n. 13. Recklessness requires an unjustifiably high risk of violating the law that is known or so obvious that it should be known and is substantially greater than the risk associated with mere carelessness. Safeco Ins. Co. of Am. v. Burr, 551 U.S. 47, 52; 56–57 (2007).

Mr. Tenorio contends that Osaka willfully violated the FLSA because it "was previously sued for an identical violation of the FLSA," and even after settling that lawsuit, "did not train or educate" its employees as to the requirements of the FLSA. (ECF No. 25-1 at PageID 80.) Indeed, Osaka was sued in 2013 by a former cook who alleged Osaka paid him $1,000 every fifteen days, despite his frequent overtime. (ECF No 29 at PageID 817–18.) Moreover, Osaka admits that it did not train or educate its employees as to the FLSA, and states that management understood the obligations under the statute. (Pham Dep., ECF No. 25-5 at PageID 241.) Even so, Osaka argues that it did not willfully violate the FLSA because (1) Mr. Tenorio produced no evidence showing that he was not compensated for his overtime or that he complained about or objected to "the method by which he was paid," and (2) Osaka's Weekly Schedules, Timesheets, and the Spreadsheet summary constituted adequate recordkeeping. (ECF No. 28 at PageID 813–

14.) The findings above have addressed those arguments and deemed them lacking. See infra discussion Section III.B (discussing established overtime and recordkeeping violations).

Osaka further argues that "Plaintiff presented no evidence that Defendant had prior notice that its compensation practices violated the FLSA, no prior Department of Labor Investigations, and no evidence that Defendant intentionally disregarded its obligations under the FLSA." (ECF No. 28 at PageID 814.) Although, Mr. Tenorio does not need to produce evidence of Osaka's notice, the proof shows that Osaka knew that (1) it was previously sued by and settled with a former cook who alleged similar FLSA violations, (ECF No. 25-1 at PageID 80); (2) Mr. Tenorio worked overtime as evidenced by Osaka's Timesheets, (see ECF No. 26-10 at PageID 491–529); (3) the FLSA required Osaka to pay Mr. Tenorio overtime compensation for those hours as evidenced by Ms. Pham's testimony; and (4) paying Mr. Tenorio a base pay of only $1,300 every fifteen days, without the required overtime compensation, was a violation of the FLSA. (See ECF No. 25-5 at PageID 241 (showing Ms. Pham, who was in charge of payroll, was aware of FLSA overtime compensation requirements, despite having no related training, and that nonexempt workers "have to be paid time and a half for time worked over 40 hours in a week.")

Osaka knew that paying Mr. Tenorio a fixed amount of $1,300 every fifteen days, plus variable tips, without more, did not satisfy the FLSA's requirement. Nevertheless, it continued to undercompensate Mr. Tenorio, despite his plentiful overtime, for years. (See ECF No. 26-10 at PageID 491–529.) This conduct was "'voluntary,' 'deliberate,' and 'intentional.'" McLaughlin, 486 U.S. 128 at 133. In other words, Osaka knew it was taking "an unjustifiably high risk of violating the law," and did it anyway. See Safeco Ins. Co. of Am., 551 U.S. at 52. Based on the record, no genuine dispute remains as to the material facts that show Osaka's

willful conduct to violate the FLSA.

**D. Liquidated Damages**

"An employer who violates the FLSA's overtime provisions is liable to the employee in the amount of unpaid overtime compensation 'and in an additional equal amount as liquidated damages.'" Martin v. Ind. Mich. Power Co., 381 F.3d 574, 584 (2004) (quoting 29 U.S.C. § 216(b)). Under the FLSA, liquidated damages are compensation—not punishment or penalty. Id. (citing Elwell v. Univ Hosps. Home Care Servs., 276 F.3d 832, 820 (6th Cir. 2002). "[L]iquidated damages are the norm" and have been called "mandatory." Id.

But Congress provides courts with some discretion to limit or deny liquidated damages. Id. (citing 29 U.S.C. § 260 and Martin v. Cooper Elec. Supply Co., 940 F.2d 896, 907 (3d Cir. 1991)). A court may exercise this discretion if an employer demonstrates that its actions were in good faith and it had reasonable grounds for believing its actions were not in violation of the FLSA. Elwell, 276 F.3d at 840. Showing good faith and reasonable belief are "substantial and require[] 'proof that [the employer's] failure to obey the statute was both in good faith and predicated upon such reasonable grounds that it would be unfair to impose upon [it] more than a compensatory verdict.'" Id. (quoting McClanahan v. Mathews, 440 F.2d 320, 322 (6th Cir. 1971)). If an employer cannot present such proof, a district court has no power or discretion to reduce an employer's liability for liquidated damages. Id.

Mr. Tenorio argues that Osaka's failure to provide or receive any training or education on FLSA compliance and its awareness and apparent disregard of the FLSA requirements show a lack of good faith and reasonable basis for its violations. (ECF No. 25-1 at PageID 79.) Osaka argues that "Plaintiff's own actions, [] including his unwillingness to utilize the time clock and being paid in cash, impacted Defendant's ability to even comply with the FLSA," and that

"Plaintiff has presented no evidence that Defendant intentionally ignored its duty to pay Plaintiff for overtime," asserting that "to the contrary, the undisputed evidence" shows that he was paid all the overtime to which he was entitled. (ECF No. 28 at PageID 811–12.)

However, the issue of liquidated damages is closely related to the question of willfulness. Dole v. Elliott Travel & Tours, Inc., 942 F.2d 962, 967 (1991). For the same reasons that Osaka's actions were willful, they also lacked good faith or a reasonable basis for violating the FLSA. Thus, liquidated damages are mandatory.

## IV. CONCLUSION

For the foregoing reasons, Mr. Tenorio's Motion for Partial Summary Judgment is **GRANTED**, as to whether Osaka violated the FLSA by (1) failing to properly compensate Mr. Tenorio for his overtime hours worked, and (2) failing to make, keep, and maintain records as to Mr. Tenorio's total wages earned per pay period. In addition, because Osaka's violations were willful, the statute of limitations is extended to three years, and liquidated damages are owed under the FLSA. Osaka's Motion for Summary Judgment is **DENIED**. Only the amount of damages owed is reserved for trial.

**IT IS SO ORDERED,** this 14th day of September, 2026.

s/ Sheryl H. Lipman
SHERYL H. LIPMAN
CHIEF UNITED STATES DISTRICT JUDGE